11 JOAN BERNARD ARMSTRONG, Judge.
This case involves a dispute as to ownership of a parcel of land and the consequent entitlement to mineral royalties attributable to that land. The trial court granted summary judgment for the defendants. The plaintiffs appeal. As we believe there are genuine issues of material fact, we will reverse and remand for further proceedings.
The land in dispute is located in the Bohemia Spillway in Plaquemines Parish. In 1925 and 1926, the Orleans Levee Board expropriated, or purchased under threat of expropriation, from numerous landowners, the land which now comprises the Bohemia Spillway. In 1984 and 1985, *1129 the Legislature enacted the Return of Lands Acts which require the Orleans Levee Board to return the lands expropriated, or purchased under threat of expropriation, for the Bohemia Spillway, to the persons from whom it was expropriated or purchased or to their successors.
The plaintiffs allege that they are the successors to the owners from whom the Orleans Levee Board purchased the land in dispute. Consequently, they also |2allege that the Orleans Levee Board should have returned to them the land which is in dispute. The defendants are the persons to whom the Orleans Levee Board returned the land in dispute, Bass Enterprises Production Company, the mineral lessee of the land in dispute, and the Orleans Levee Board.
The plaintiffs-appellants assert that the Orleans Levee Board purchased the land in dispute, which is referred to in the briefs (for reasons discussed below) as Track 99, from their predecessors Charles Schneidau and Albert Zenon. The plaintiffs also claim that the Orleans Levee Board purchased a parcel of land, which is referred to in the briefs as Tract 101, from Jules Fisher. The successors to Jules Fisher are the defendants to whom the Orleans Levee Board returned Tract 99.
The defendants-appellees claim that the Orleans Levee Board purchased Tract 101 from Schneidau and Zenon and that the Orleans Levee Board purchased Tract 99 from Jules Fisher. Apparently, the differences between the parties are important because Tract 99 is within a producing mineral area, and mineral royalties are attributable to it, whereas Tract 101 is outside of that field and no mineral royalties are attributable to it.
The deed from Jules Fisher to the Orleans Levee Board contains a reference to “Tract 101”, and the deed from Zenon to the Orleans Levee Board contains a reference to “Tract 99”. (The deed from Schneidau to the Orleans Levee Board does not contain a reference to either Tract Number.) The Tract Numbers come from a plat, referred to as the “Brodtmann Plat” because it was attached to an act | Spassed before a notary named Brodtmann, which Plat was prepared by the Orleans Levee Board in 1925-26. The Brodtmann Plat numbered parcels of land, “tracts”, were to be acquired by the Orleans Levee Board for the Bohemia Spillway. The names of the owners of the land were written in each tract on the Plat. The names “Zenon” and “Schneidau” appear on Tract 99 and the name “Fisher” appears on Tract 101.
When the Orleans Levee Board actually purchased the various tracts of land, it annotated a copy of the Brodtmann Plat, referred to as the Real Estate Map, with the purchase prices. The Real Estate Map reflects that a portion of Tract 99 was purchased from Zenon for $550, that another portion of Tract 99 was acquired form Schneidau, also for $550, and that land in Tract 101 was acquired from Fisher for $1660. The Orleans Levee Board also prepared an annotated “Tract List” of the land it purchased and that Tract List reflects that it purchased land in Tract 99 from Zenon for $550 on January 4, 1926, land in tract 99 from Schneidau for $550, and land in Tract 101 from Fisher for $1600 on April 22,1925.
In rebuttal to the Orleans Levee Board’s land purchase records, the defendants have presented analyses of the chains of title of Zenon, Schneidau and Fisher which, they contend, show that all of the Orleans Levee Board’s records as to the persons from whom it purchased Tract 99 and Tract 101 are in error. The defendants present lengthy chains of title based upon “historic descriptions” in conveyances. The plaintiffs then critique those *1130 same “historie descriptions” as confused, ambiguous and, so they contend, misleading.
|4None of the documents presented by either side are recent vintage and some of the title documentation presented, is, in fact, ancient. Apparently, none of the persons involved in the Orleans Levee Board’s land purchases, or persons with first-hand on-the-ground knowledge of who owned what land in 1925, are still alive to testify. The terminology of some of the documents presented by the parties is highly technical, sometimes archaic and often cumbersome. The Brodtmann Plat and the other Orleans Levee Board records derived from it at least have the advantage of clarity although, it is true, clarity is not a guarantee of accuracy. In any event, the crux of the matter, whether the ancient, complex title documentation presented by the defendants demonstrates that the Orleans Levee Board was completely mistaken as to the persons from whom it was acquiring land in Tract 99 and Tract 101, is best resolved by a full trial on the merits, with the documentation explained with expert testimony subject to cross-examination, rather than by summary judgment. We do not believe that official records of the Orleans Levee Board, prepared contemporaneously with the land purchases at issue, including the Brodtmann Plat, can be disregarded as erroneous without a full trial. To put it another way, regardless of the ultimate determination of the accuracy of the Brodtmann Platt and the other contemporaneous official records of the Orleans Levee Board, they do create a genuine issue of material fact La.Code Civ. Proc. art 966.
Lastly, the defendants cite Richardson & Bass v. Board of Levee Commissioners, 226 La. 761, 77 So.2d 82 (1954), with respect to the Brodtmann [-¡Plat. However, all that the Supreme Court stated in that decision was that, with respect to the particular issues in that case, the “accuracy” of the Brodtmann Plat had “not been established” in that ease. That is not the same as a conclusion that the Brodtmann Plat is not accurate and, in particular, it says nothing about whether the Brodt-mann Plat is accurate with respect to the specific issues in the present case, i.e. who sold land in the Tract 99 and who sold land in Tract 101.
For the foregoing reasons, the summary judgment below is reversed and we remand for further proceedings. All costs of these proceedings are deferred to the trial court after a trial on the merits.

REVERSED AND REMANDED.