JUDE G. GRAVOIS, Judge.
12This appeal is from a summary judgment rendered in a concursus proceeding against defendants, Zodiac Corporation, Ltd. (“Zodiac”) and Salzer & Ramos Enterprises, Ltd. (“Salzer & Ramos”) (collectively, the “Zodiac Group”), finding that a tax sale whereby the Zodiac Group’s ancestor in title purportedly acquired ownership of one of the parcels of immovable property involved in the con-cursus proceeding was absolutely null, and thus denying the Zodiac Group’s claims to a portion of the funds deposited into the registry of the court as part of the concursus proceeding. The Zodiac Group has also filed, in this Court, an exception of no cause of action based on peremption. For the following reasons, we affirm the trial court’s grant of summary judgment and deny the exception.

*396
FACTS AND PROCEDURAL HISTORY

In 2010, plaintiffs, Quantum Resources Management, L.L.C. (“Quantum”) and Mi-lagro Producing, L.L.C. (“Milagro”), filed this concursus proceeding, ^alleging that they were the owners of several oil, gas, and mineral leases that covered, among other properties, Lots 1-5 and Lots 35-88 in the Third Jefferson Drainage District, in Sections 13 and 24, Township 16 South, Range 23 East, near Lafitte, in Jefferson Parish, Louisiana. Quantum asserted that it was the unit operator of the CRIS 2 RA SU A Unit (the “Subject Unit”), which the aforementioned lots contributed acreage to, and upon which were situated two producing wells, known as the Mayronne No. 1 Well and the Mayronne No. 2 Well. (The property is apparently not subject to corporeal possession as it is under water.) Desiring to pay the proper parties the proceeds of production from these wells, Quantum and Milagro instituted this con-cursus proceeding, naming four groups of defendants which Quantum and Milagro identified from the public records as possibly having ownership interests in said lots that form part of the Subject Unit. Named as defendants in addition to the Zodiac Group were Pirate Lake Oil Corporation (“Pirate Lake”), George J. May-ronne, Jr., Agatha B. Mayronne Haydel, the Succession of Oswald Harry May-ronne, and Huey J. Mayronne (collectively, the “Mayronne Group”), and Joseph K. Handlin, II, Alan Kent Jones, Jennifer Elizabeth Jones, Patrick Kent Lindsay Jones and Jacqueline A.L. Jones (collectively, the “Handlin-Jones Group”) (these two groups are also collectively referred to herein as the “Mayronne and Handlin-Jones Groups”).
The current appeal concerns only the ownership interests in and to Lot 4 in the Third Jefferson Drainage District within the Subject Unit (the “subject Lot 4”). The Mayronne and Handlin-Jones Groups filed a motion for summary judgment, arguing that the Zodiac Group had no right, title, or interest in and to the subject Lot 4 because the Zodiac Group’s claim of title stemmed from a 1926 tax sale that was absolutely null, first because the tax assessment was in the name of a person who never actually owned the subject Lot 4, and second because there was no | ¿evidence that the Sheriff gave notice of the tax sale to the record owner of the subject Lot 4, violating the constitutional due process notice requirements established by Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). The Zodiac Group opposed the motion, arguing that the attack on the 1926 tax sale to their predecessor in title was subject to the five-year peremptive period set forth in the 1921 and 1974 Louisiana Constitutions. The trial court ruled in favor of the movers, dismissing the Zodiac Group’s claims of ownership of the subject Lot 4, with prejudice.
On appeal, the Zodiac Group argues that the trial court erred in finding that no issues of material fact remained, and in failing to find that the attack on the 1926 tax sale was perempted under the 1921 and 1974 Louisiana Constitutions,[1] as per *397 the Louisiana Supreme Court’s holding in Gulotta v. Cutshaw, 283 So.2d 482 (La.1973). The exception of no cause of action filed by the Zodiac Group in this Court asserts that the movers have no cause of action for the summary judgment based on this same constitutional peremption.
The record and briefs in this case reflect that the Mayronne and Handlin-Jones Groups’ claim of ownership to the subject Lot 4 is based on a sale of property from John S. Wells to George Mayronne dated August 8, 1938, recorded in Jefferson Parish in COB 144, Page 7. Mr. Wells had acquired this property at a tax sale on August 30, 1919 for 1918 unpaid taxes assessed in the name of Virgil Nobles. The affidavit of Larry E. Porterfield, the Mayronne and Handlin-Jones Groups’ professional land surveyor, indisputably established that the “Lot 4” |Bineluded in the sale from Mr. Wells to Mr. Mayronne is the subject Lot 4. Mr. Mayronne’s title in and to the subject Lot 4 later devolved to the Mayronne and Handlin-Jones Groups.
On the other hand, the record and briefs in this case reflect that the Zodiac Group’s claim of ownership to the subject Lot 4 is based on a tax sale dated August 22, 1925 whereby property identified as “Lot 4” assessed in the name of Eric (Erie) T. White was conveyed to John A. Saxton for unpaid 1924 taxes assessed in the name of Mr. White. Thereafter, on October 30, 1931, Mr. Saxton conveyed this “Lot 4” to Zodiac. On April 28, 1949, Zodiac conveyed an undivided one-half interest in and to this “Lot 4” to Robert R. Ramos, whose undivided one-half interest therein later devolved to Salzer & Ramos.
According to the affidavits of the May-ronne and Handlin-Jones Groups’ abstractor and surveyor, the public records of Jefferson Parish establish that Louisiana Meadows Company had previously conveyed “Lot 4 of Block 8, the town of Lafitte” to Mr. White. Although Mr. White had previously acquired various properties in Jefferson Parish, none of these acquisitions included property within the Subject Unit, and the “Lot 4” acquired by Mr. White from Louisiana Meadows Company was not the subject Lot 4, but rather was “Lot 4 of Block 8, the town of Laffite”. While the 1922 Jefferson Parish Tax Assessment Rolls accurately described the property assessed to Mr. White as “Farm Lots 167-847-848- & í B 8 Barata-ría — 15 acres Fresh water A 100” (emphasis added), through an apparent error in the description of that lot U B 8) in the 1924 tax assessment, the Jefferson Parish Tax Assessment Rolls for 1924 described the property assessed to Mr. White simply as “Farm Lots 167-847-848- & 4 Cont 15.45 acres Barataría — 15 acres Fresh water ‘A’ 100” (emphasis added).
|fiThe Zodiac Group acknowledges that Mr. White never owned the subject Lot 4, and does not challenge the movers’ assertion that notice of the 1926 tax sale purporting to include the subject Lot 4 was never given to the record owner of the subject Lot 4. However, the Zodiac Group argues that under Gulotta v. Cutshaw, the lack of notice to the record owner made the 1926 tax sale a relative nullity that was cured by the five-year peremptive period found in the 1921 and 1974 Louisiana Constitutions. The Zodiac Group further argues that genuine issues of material fact remain as to whether the Sheriff, in 1926, *398 employed “reasonable steps” to give notice of the pending tax sale to the record owner.
The movers argued, however, that Mennonite, supra, at 798,103 S.Ct. 2706, effectively overruled Gulotta, at least regarding tax sales with the constitutional deficiency of lack of notice to the record owner of the property subject to the tax sale. Mennonite held that a tax sale without notice to a person with a “legally protected property interest” in the property is a violation of the Due Process Clause of the 14th Amendment to the United States Constitution, thereby rendering such a sale an absolute nullity.
In Gulotta, which was handed down in 1973, the Louisiana Supreme Court found a tax sale valid pursuant to an assessment in the name of a person not the owner of the property since a suit challenging the validity of the tax sale had not been brought within the five-year peremptive period provided by the Louisiana Constitution. Gulotta, 283 So.2d at 492. Finding that none of the three exceptions to the running of the peremptive period — 1) payment of taxes prior to sale; 2) the tax debtor remaining in corporeal possession of the property; and 3) lack of sufficient description of the property in the assessment — were present, the court concluded that the seller’s non-ownership of the property did not warrant the tax sale being set aside. Id.

¡¿ANALYSIS

Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action. The procedure is favored and shall be construed to accomplish these ends.
A motion for summary judgment should be granted only if the pleadings, depositions, answers- to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The initial burden of proof is with the mover to show that no genuine issue of material fact exists. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. The non-moving party must then produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the non-moving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. LSA-C.C.P. art. 966(C)(2); Callis v. Jefferson Parish Hosp. Service, Dist. # 1, 07-580, pp. 4-5 (La.App. 5 Cir. 12/27/07), 975 So.2d 641, 643. Whether a particular fact is material can be seen only in light of the substantive law applicable to the case. Hubbard v. Jefferson Parish Parks, and Recreation, 10-24 (La.App. 5 Cir. 5/25/10), 40 So.3d 1106,1110.
When a tax sale of real property does not meet the constitutional and jurisprudential criteria, including if the debtor’s due process rights were violated | ^because of lack of adequate notice as per Mennonite, the peremptive period of La. Constitution Article VII, § 25(C) does not run. The tax sale is an absolute nullity that may be attacked collaterally at any time, and is not cured by the constitutionally peremp-tive period. Bank One Louisiana, N.A. v. Gray, 34,802 (La.App. 2 Cir. 6/20/01), 792 So.2d 29. Notably, in State Through Dept. *399 of Tmnsp. & Dev. v. Knight, 93-767 (La.App. 3 Cir. 2/2/94), 631 So.2d 714, the Second Circuit noted that it had been generally held, when Gulotta v. Cutshaw was written (upon which the Zodiac Group relies and which was handed down prior to Mennonite), that lack of notice of a tax sale to the record owner made the tax sale a relative nullity that was cured by the three- and five-year peremptive periods provided by the Louisiana Constitution. However, the Knight court acknowledged that Mennonite’s elevation of the notice requirement to a due process violation renders a tax sale with this deficiency an absolute nullity, effectively overruling this part of Gulotta’s holding relative to this sort of deficiency, the Zodiac Group’s reliance notwithstanding. Thus, because the movers herein may attack the 1926 tax sale as an absolute nullity, the Zodiac Group’s exception of no cause of action is hereby denied.
⅛ ⅛ brief, the Zodiac Group lists fourteen “Specifications of Errors and Issues Presented: Facts.”[2] Some of these are specifications of error are asserted as j^uncontested facts (Nos. 1 through 11), and some relate to the burdens of proof (Nos. 12-14). Finding as we do that the 1926 tax sale was an absolute nullity as per Mennonite, and that Gulotta’s holding (and the constitutional peremptive period of five years) is now limited to attacks upon tax sales that are relative nullities, it is unnecessary for us to address each of the Zodiac Group’s specifications of error individually, as the “facts” listed therein, uncontested or contested, are not relevant to our analysis in light of the uncontested *400 facts that Mr. White was neither the record owner nor the actual owner of the subject Lot 4, and importantly, that the record owner of the subject Lot 4 did not receive notice of the pending tax sale.
The Zodiac Group argued in brief and at oral argument to this Court that neither their opponents nor the court below addressed the “reasonable step” doctrine, noted by the United States Supreme Court in Jones v. Flowers,[3] which the Zodiac Group argues excused the Sheriff in 1926 from ascertaining the identity of the record owner of the subject Lot 4, or at least excused the Sheriff from doing anything more than providing notice of the tax sale to Mr. White, the assessed owner of the subject Lot 4.
The Jones case held that when notice of a tax sale is mailed to the owner and is returned undelivered, the government must take additional reasonable steps to provide notice to the owner before taking the owner’s property, if it is practicable. 110The Court held that due process does not require that the property owner receive actual notice before the government may take his property; rather, due process requires only that the government provide notice “reasonably calculated” under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. While declining to prescribe a particular form of notice, the Court found that mailing two letters to the owner that were returned unclaimed, plus publishing the notice of the tax sale in the newspaper two years after the initial notice was returned unclaimed, were inadequate to comply with the State’s constitutional due process requirements.
The Zodiac Group argues that in accordance with Jones, the actions taken by the Sheriff, in 1926, should be considered to have been fair and reasonable to all concerned parties under the particular facts and circumstances involved in this case, particularly in light of alleged complications involved in the title to the subject Lot 4. In other words, the Zodiac Group maintains that it would have been impracticable for the Sheriff, in 1926, to have been required to take any additional steps in attempting to ascertain and give notice of the pending tax sale to the record owner of the subject Lot 4, and thus only giving notice of the pending tax sale to the assessed owner of the subject Lot 4 should be considered sufficient and reasonable under the particular facts and circumstances involved in this case.
With all due respect to the Zodiac Group’s arguments, we find that Jones is distinguishable from this case. In Jones, the State did send a notice of the pending tax sale to the record owner of the property in question that was returned undeliverable and therefore was known by the State to be ineffective. Inadequate further steps were then taken by the State to provide notice of the pending tax sale to the record owner. In this case, however, the record owner of the subject Lot 4 was not in any way notified of the pending tax sale. Jones presupposes that the |nState will at least attempt to ascertain and notify the record owner of the property of the pending tax sale. Because the notice was returned undeliverable in Jones, the State was made aware that the notice was ineffective and should have taken additional “reasonable steps” to provide notice of the pending tax sale to the record owner. In our view, Jones does not excuse the Sheriff from at least taking “reasonable steps” to ascertain and attempt to give notice of the pending tax sale to the record owner of the subject property. In this case, notice of *401 the tax sale was only sent, if at all, to a person (Mr. White) who was not the record owner of the subject property. In other words, in this case, no notice, reasonably calculated or otherwise, of the pending tax sale was provided to the record owner of the subject Lot 4. Accordingly, the Zodiac Group’s reliance on Jones is misplaced and without merit.

CONCLUSION

Based on our de novo review of this matter, and after carefully considering the law applicable to this case, for the reasons set forth herein, we find that no genuine issues of material fact remain in this case, and accordingly, affirm the trial court’s grant of summary judgment dismissing the claims of the Zodiac Group in this concur-sus proceeding, and further deny the Zodiac Group’s exception of no cause of action based on peremption filed in this Court.

AFFIRMED

. La. Const, art. VII, § 25(C) (1974) provides as follows: Annulment. No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given. The fact that taxes were paid on a part of the property sold prior to the sale thereof, or that a part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was *397 sold were due and unpaid. No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser; however, this shall not apply to sales annulled because the taxes were paid prior to the date of sale.

.The Zodiac Group's specifications of error and issues presented for review are as follows:
1. The District Court ignored the undisputed facts which support the application of Article 10 Section 11 and the Gulotta case in this concursus.
2. The District Court ignored the fact that Erie White was the assessed owner of Lot 4, 3rd Jefferson Drainage District on the tax rolls for the years immediately prior to the tax sale.
3. The District Court ignored the fact that White was the only assessed owned of Lot 4 at the time of the tax sale in 1926.
4. The District Court ignored the undisputed fact that the White/Saxton tax sale was not attacked until the filing of this concursus suit, many, many years after the 1926 tax sale.
5. The District Court ignored the undisputed fact that Lot 4 was correctly described in the Erie White assessment.
6. The District Court ignored the undisputed fact that the 1925 taxes were not paid by anyone prior to the 1926 sale to John Saxton.
7. The District Court ignored the undisputed fact that there is no corporeal possession of Lot 4 because it is in the Pen behind Lafitte and is underwater.
8. The District Court ignored the undisputed fact that the other chains of title have conflicting and confusing tax sales from Wisner Estates to different purchasers within a period of three years.
9. The District Court ignored the fact that the Sheriff complied with all Mennonite/Mullane requirements in the White/Sax-ton tax sale.
10. The District Court ignored the fact that Lot 4 was correctly described in the White assessment and the White/Saxton tax sale.
11. The District Court ignored the fact that the White/Saxton sale was not attacked for many years after the constitutional five-year preemption had passed.
12. The District Court ignored all of the facts and problems in the other chains of title arising from the multiple tax sales and conveyances from the same seller in a very short period of time which bring this case within the scope of the "reasonable step” rule.
13. The District Court ignored the facts which show that none of the three limited exceptions to the five-year constitutional preemption on tax sales apply in this case.
14. The District Court ignored the well known rule that the burden of proof shifts to the party attacking the title if pleading attacking the title is perempted on its face.

. 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006).