KNOLL, Justice.*
| tThis civil case involves a 1925 tax sale in Jefferson Parish and the failure to give notice of the pending tax sale to the property owner. In Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the United States Supreme Court held the failure of the State to give notice of a pending tax sale to a property owner is a violation of due process, rendering the tax sale null and void. The specific issue in the present case is whether Mennonite can be applied retroactively to invalidate this 1925 tax sale.
Plaintiffs, owners of oil, gas, and mineral interests, filed this instant concursus proceeding against four groups of record landowners, Pirate Lake Oil Corporation, the Mayronne Group, the Handlin-Jones Group, and the Zodiac Group, to determine the parties entitled to the proceeds of production. The Mayronne and Handlin-Jones Groups filed a motion for summary judgment, arguing the Zodiac Group had no interest in the property. The District Court granted the motion for summary judgment and dismissed the Zodiac Group’s claims of ownership in the property with prejudice. The Court of Appeal *212 affirmed, finding the Zodiac Group’s ancestor in title was never the record owner of the property. Further, the Zodiac Group traced its ownership of the property to a 1925 |2tax sale, and there was no evidence the Sheriff provided notice of the sale to the record owner of the property, as required by the Fourteenth Amendment Due Process Clause under Mennonite. Quantum Res. Mgmt., L.L.C. v. Pirate Lake Oil Corp., 11-813 (La.App. 5 Cir. 5/31/12); 98 So.3d 394. We granted this writ to further consider the correctness vel non of the appellate court’s decision. Quantum Res. Mgmt., L.L.C. v. Pirate Lake Oil Corp., 12-1472 (La.11/9/12); 100 So.3d 822.
For the following reasons, we find Mennonite cannot apply retroactively to invalidate the 1925 tax sale for lack of notice. Further, while the Zodiac Group’s ancestor in title was not the record owner of the property, any defect is cured by the five-year peremptive period of Article X, § 11 of the 1921 Louisiana Constitution. Accordingly, we reverse the judgments of the lower courts.
FACTS AND PROCEDURAL HISTORY
In 2010, plaintiffs, Quantum Resources Management, L.L.C. (“Quantum”) and Mi-lagro Producing, L.L.C. (“Milagro”), filed a concursus petition pursuant to La.Code Civ. Proc. art. 4651 et seq., alleging they were the owners of several oil, gas, and mineral leases covering Lots 1-5 and Lots 35-38 in the Third Jefferson Drainage District, in Sections 13 and 24, Township 16 South, Range 23 East, near Lafitte in Jefferson Parish, Louisiana. Quantum asserted it was the unit operator of the CRIS 2 RA SUA Unit (the “Subject Unit”), established by Office of Conservation Order No. 1414, effective February 25, 1997. The aforementioned lots contribute acreage to the Subject Unit, which currently has two producing wells, known as the Mayronne No. 1 Well and the May-ronne No. 2 Well. In order to pay the proceeds of production to the proper parties, Quantum and Milagro named as defendants the following parties listed in the public records as having possible ownership interests in the lots: (1) Pirate Lake Oil Corporation; (2) George J. Mayronne, Jr., Agatha B. Mayronne Haydel, the Succession of Oswald 1 sHarry Mayronne, and Huey J. Mayronne (collectively the “May-ronne Group”); (3) Joseph K. Handlin, II, Alan Kent Jones, Jennifer Elizabeth Jones, Patrick Kent Lindsay Jones, and Jacqueline A.L. Jones (collectively the “Handlin-Jones Group”); and (4) Zodiac Corporation, Ltd. and Salzer & Ramos Enterprises, Ltd. (collectively the “Zodiac Group”).
This present writ concerns a dispute between the Mayronne and Handlin-Jones Groups (or “Respondents”) and the Zodiac Group, as to the ownership of Lot 4 in the Third Jefferson Drainage District within the Subject Unit (“Lot 4”). The parties note Lot 4 is covered by several feet of water and located in an area called “the Pen,” near Lafitte, which is used primarily for fishing and crabbing.
The Mayronne and Handlin-Jones Groups’ claim of title is based on a sale of Lot 4 from John S. Wells to George May-ronne dated August 8, 1938, recorded in Jefferson Parish (COB 144, Page 7). Wells acquired Lot 4 in an August 30,1919 tax sale for 1918 unpaid taxes assessed in the name of Virgil Nobles (COB 46, Page 158). Mayronne’s title in and to Lot 4 later devolved to the Mayronne and Hand-lin-Jones Groups. An affidavit by Larry E. Porterfield, the Respondents’ professional land surveyor, confirms the Lot 4 purchased by George Mayronne is the same Lot 4 within the boundaries of the Subject Unit.
*213 In turn, the Zodiac Group’s claim of ownership is based on a tax sale dated August 22, 1925, where property identified as “Lot 4” of the Third Jefferson Drainage District assessed in the name of Erie (Eric) T. White was conveyed to John A. Saxton for unpaid 1924 taxes assessed in the name of White (COB 70, Page 617). Subsequently, on October 30, 1931, Saxton conveyed the property to the Zodiac Corporation, Ltd. (COB 112, Page 331). On April 28, 1949, Zodiac Corporation, Ltd. conveyed an undivided one-half interest in the property to Robert R. Ramos, whose rights have now devolved to Salzer & Ramos Enterprises, Ltd. (COB 307, Page 681).
14According to the affidavit of the May-ronne and Handlin-Jones Groups’ survey- or, the Lot 4 owned by White was not the same Lot 4 located within the boundaries of the Subject Unit. The Public Records of Jefferson Parish indicate the Louisiana Meadows Company transferred “Lot 4 of Block 8, the town of Lafitte,” a separate piece of property, to White in 1915 (COB 35, Page 243). The 1922 Jefferson Parish Tax Assessment Rolls correctly describe the property as “Farm Lots 167-847-848- & 4 B 8 Barataria-15 acres Freshwater A 100.” The 1924 Tax Assessment Rolls, however, mistakenly describe the property as “Farm Lots 167-847-848- & 4 Cont. 15.45 acres Barataria-15 acres Freshwater ‘A’ 100.” Based on this inaccurate description, the State transferred Lot 4 of the Third Jefferson Drainage District to Sax-ton, the Zodiac Group’s ancestor in title.
On December 22, 2010, the Mayronne and Handlin-Jones Groups filed a motion for summary judgment, arguing the Zodiac Group had no right, title, or interest in and to Lot 4. Respondents maintain the 1925 tax sale to Saxton was an absolute nullity because White never actually owned Lot 4 and because there is no evidence the Sheriff gave notice to the record owner of Lot 4, violating the due process notice requirements established by Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 5.Ct. 2706, 77 L.Ed.2d 180 (1983). The Zodiac Group argued the attack on the 1925 tax sale was untimely under the five-year peremptive period for annulling tax sales under Article X, § 11 of the 1921 Louisiana Constitution.[1] The District Court granted the motion for summary judgment, dismissing the Zodiac Group’s claims of ownership with prejudice. The court found, as White never owned Lot 4, the Sheriff could not transfer any ownership interest by the tax sale to Saxton. Additionally, the court ruled the lack of notice to the record owners of Lot 4 violated the Due Process Clause under Mennonite.
UThe Court of Appeal affirmed, finding the 1925 tax sale was an absolute nullity, as White was neither the record owner nor the actual owner of Lot 4, and the record owner of Lot 4 did not receive notice of the tax sale. Quantum Res. Mgmt., L.L.C. v. Pirate Lake Oil Corp., 11-813 (La.App. 5 Cir. 5/31/12); 98 So.3d 394. On appeal, the Zodiac Group filed an exception of no cause of action based on peremption. The court denied this exception, noting when a debtor’s due process rights are violated because of lack of adequate notice of a tax sale as required by Mennonite, the five-year peremptive period of La. Const. art. X, § 11 does not run. Id. at 398.
The Zodiac Group, citing Gulotta v. Cutshaw, 283 So.2d 482 (La.1973), argued the *214 lack of notice to the record owner made the 1925 tax sale a relative nullity, which was cured by the five-year peremptive period. However, the appellate court held Mennonite’s elevation of the notice requirement to a due process violation renders a tax sale with this deficiency an absolute nullity, effectively overruling Gu-lotta. Id. at 399 (citing State, through Dep’t of Transp. & Dev. v. Knight, 93-767 (La.App. 3 Cir. 2/2/94); 631 So.2d 714). As the 1925 tax sale was an absolute nullity, the Mayronne and Handlin-Jones Groups could challenge the tax sale collaterally at any time.[2]
DISCUSSION

Standard of Review

On a motion for summary judgment, this Court reviews the record de novo to determine whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. La. Code Civ. Proc. art. 966; Harrah’s Bossier City Inv. Co., L.L.C. v. Bridges, 09-1916, p. 8 (La.5/11/10); 41 So.3d 438, 445. Initially, the movant bears the burden of proof. La.Code Civ. Proc. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial, the movant is not required to negate all essential elements of the adverse party’s claim, but merely point to an absence of factual support for one or more of the elements essential to the adverse party’s claim, action, or defense. Id. If the movant successfully meets this burden, then the burden shifts to the other party to present factual support adequate to establish that he/she will be able to satisfy the evidentiary burden at trial. Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc., 06-1827, p. 6 (La.5/22/07); 958 So.2d 634, 638. If the other party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law. Id.

Fourteenth Amendment Due Process Requirements

The Fourteenth Amendment of the United States Constitution states: “No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty, or property, without due process of law.” In Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), the United States Supreme Court held “[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.”
In Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the Supreme Court recognized a tax sale of property is an action affecting a property right protected by the Due Process Clause of the Fourteenth Amendment. Consequently, a party possessing a substantial property interest “is entitled to notice reasonably calculated to apprise him of a pending tax *215 sale.” Id. at 798, 108 S.Ct. at 2711. The Court stated: “Notice by mail or other 17means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.” Id. at 800, 103 S.Ct. at 2712 (emphasis in original). Since Mennonite, Louisiana courts have repeatedly held the failure to give notice to a record property owner is a violation of due process and the resulting tax sale is null and void in its entirety. Smitko v. Gulf S. Shrimp, Inc., 11-2566, p. 14 (La.7/2/12); 94 So.3d 750, 759.
The Supreme Court has never stated whether the requirements announced in Mennonite are to apply retroactively to tax sales predating the decision. Nor has this Court addressed this difficult issue. Currently, there is a divergence of opinion among the few state courts which have considered the retroactive application of Mennonite. Compare Aarco Oil & Gas Co. v. EOG Res., Inc., 20 So.3d 662 (Miss.2009) and McCann v. Scaduto, 71 N.Y.2d 164, 519 N.E.2d 309, 524 N.Y.S.2d 398 (1987) (applying Mennonite retroactively), with Geibel v. Clark, 185 W.Va. 505, 408 S.E.2d 84 (1991) (refusing to apply Mennonite retroactively). Accordingly, we turn to the Supreme Court’s jurisprudence regarding retroactive application of its decisions to resolve this issue and give guidance to our lower courts.

Retroactivity

For hundreds of years, courts have recognized a general rule of retroactive application for the constitutional decisions of the United States Supreme Court. See, e.g., Robinson v. Neil, 409 U.S. 505, 507, 93 S.Ct. 876, 877, 35 L.Ed.2d 29 (1973); Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 543, 61 S.Ct. 347, 350, 85 L.Ed. 327 (1941); Kuhn v. Fairmont Coal Co., 215 U.S. 349, 371, 30 S.Ct. 140, 148, 54 L.Ed. 228 (1910) (Holmes, J., dissenting) (“Judicial decisions have had retrospective operation for near a thousand years.”). As Chief Justice John Marshall observed “if subsequent to the judgment and before the decision of the | «appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied.” United States v. The Schooner Peggy, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801).
Beginning in the 1960s, however, the Supreme Court began to limit certain decisions to prospective application, in part, due to its reluctance to apply the Warren Court’s criminal procedure decisions retroactively, potentially freeing countless defendants. See Jill E. Fisch, Retroactivity and Legal Change: An Equilibrium Approach, 110 Harv. L.Rev. 1055, 1059 (1997). In Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Court held it could, in the interests of justice, deny retroactive effect to a newly announced rule of criminal law. Id. at 636, 85 S.Ct. at 1741 (limiting Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). The Supreme Court then extended this discretionary approach to civil cases, permitting the denial of retroactivity to “new principiéis] of law,” if retroactive effect would “retard [ ] operation” of the new rule or produce “injustice or hardship.” Chevron Oil v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).
In recent years, however, the Court’s jurisprudence has changed dramatically. In Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987), the Court eliminated limits on retroactivity in criminal cases, holding “a new rule ... applie[s] retroac *216 tively to all cases, state or federal, pending on direct review or not yet final.” Subsequently, in James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), a plurality of the Court concluded a new rule of law should apply retroactively in civil cases as well. Justice Souter’s opinion, which garnered the most support, noted, however, “retro-activity in civil cases must be limited by the need for finality; once suit is barred by res judicata or by statutes of limitation or repose, a new rule cannot reopen the door already closed.” Id. at 541, 111 S.Ct. at 2446 (citation omitted). Two years later, in Harper v. Virginia Department of Taxation, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), a majority of the Court set forth a definitive rule for retroactivity in civil cases, based on “the position of a majority of Justices in Beam,” holding:
When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.
Id. at 97, 113 S.Ct. at 2517. Accordingly, unless the Court “ ‘reserve[s] the question whether its holding should be applied to the parties before it,’ ” a new rule articulated by the Court “must be ‘read to hold ... that its rule should apply retroactively to the litigants then before the Court.’” Id. at 97-98, 113 S.Ct. at 2518 (quoting Beam, 501 U.S. at 539, 111 S.Ct. at 2445 (opinion of Souter, J.)). Subsequent cases have noted Harper “established a firm rule of retroactivity.” Landgraf v. USI Film Prods., 511 U.S. 244, 279 n. 32, 114 S.Ct. 1483, 1504, 128 L.Ed.2d 229 (1994).
Respondents argue the instant case is “still open on direct review,” as there has been no previous action to quiet title. The Supreme Court in Harper did not define “direct review”; however, the great weight of case law holds a new rule of constitutional law is applied to future cases and those cases pending on direct review at the time the Court rendered its decision.[3] The instant case was not pending on direct review at the time the Supreme Court decided Mennonite in 1983.
Further, the term “direct review” must be considered in light of the Court’s | ^pronouncement in Beam, that retroactive application of the Court’s rulings is limited by principles of res judicata and statutes of limitations or repose.[4] Beam, 501 U.S. at 541, 111 S.Ct. at 2446; see Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 759, 115 S.Ct. 1745, 1751, 131 L.Ed.2d 820 (1995) (noting “finality” “limits the principle of retroactivity itself’); United *217 States v. Estate of Donnelly, 397 U.S. 286, 296, 90 S.Ct. 1033, 1039, 25 L.Ed.2d 312 (1970) (Harlan, J., concurring) (“[T]he rights of the parties should be considered frozen ... when the transaction is beyond challenge either because the statute of limitations has run or the rights of the parties have been fixed by litigation and have become res judicata.”). As Judge Dennis of the federal Fifth Circuit noted, despite the doctrine of full retroactivity announced in Harper, “[i]t is well established that the effect of even a fully retroactive jurisprudential decision is limited by certain independent overriding legal principles,” such as res judicata and statutes of limitations. Hulin v. Fibreboard Corp., 178 F.3d 316, 323 (5th Cir.1999); see Glazner v. Glazner, 347 F.3d 1212, 1221 n. 5 (11th Cir.2003) (holding res judicata and statutes of limitations “necessarily circumscribe the retroactive application of the rule we announce today”). The rationale for this limitation is to maintain legal stability. Hulin, 178 F.3d at 323. A contrary rule would produce chaos in the legal system, as judgments could be continually opened and reopened with every fluctuation in the law.[5] In short, although Beam and Harper recognized a rule of full retroactivity, once a claim has become final it cannot be revived. William J. Rich, ^Modern Constitutional Law § 1:9, at 28 (3d ed.2011). Accordingly, we conclude Mennonite cannot apply retroactively in the instant case, as the case was not pending on direct review when the Supreme Court decided Mennonite and suit to annul the 1925 tax sale is perempted under Article X, § 11 of the 1921 Louisiana Constitution.
Respondents acknowledge the two exceptions to complete retroactivity stated in Beam, but maintain these exceptions are inapplicable to the present case. First, Respondents argue Article X, § 11 is facially unconstitutional under Mennonite, as it provides a peremptive period for annulling a tax sale “if no notice is given.” Thus, Respondents maintain, the five-year peremptive period does not prohibit retroactive application of Mennonite, citing the Supreme Court’s decision in Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995).
In Hyde, the Supreme Court applied a decision concerning the constitutionality of Ohio’s statute of limitations for tort actions retroactively to find a pending suit was untimely. An Ohio statute provided a two-year statute of limitations for tort suits against Ohio residents, but tolled the two-year period for suits against out-of-state defendants. The statute “in effect, gave Ohio tort plaintiffs unlimited time to sue out-of-state (but not in-state defendants).” Id. at 750, 115 S.Ct. at 1747. Plaintiff filed suit more than three years after an automobile accident in Ohio against an out-of-state defendant. While the case was pending in the Ohio courts, the Supreme Court decided Bendix Autolite Corp. v. Midwesco Enter., Inc., 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988), which struck down the tolling provision in the Ohio statute as a violation of the Commerce Clause. The trial court then dismissed Hyde’s suit as untimely because it was filed more than two years after her accident. However, the Ohio Supreme Court reinstated the suit, finding Bendix could not be applied retroactively to tort 112claims which accrued prior to the decision. Id. at 751, 115 S.Ct. at 1747. The United States Supreme *218 Court reversed, holding the Supremacy Clause prevented Ohio from applying its unconstitutional tolling statute to tort claims that accrued prior to Bendix. Id.
Hyde is distinguishable from the present case. First, the Hyde Court was applying a new rule regarding the statute of limitations itself. Cf. Pamela J. Stephens, The New Retroactivity Doctrine: Equality, Reliance and, Stare Decisis, 48 Syracuse L.Rev. 1515, 1568 n. 397 (1998) (noting finality limits retroactivity “[e]xcept, of course, when the new rule itself changes one of these doctrines”) (citing Hyde). Here, there has been no Supreme Court decision directly holding the five-year per-emptive period is unconstitutional. More importantly, in Hyde, the Supreme Court was not reopening a time-barred suit. The Court merely held the two-year limitation period, the constitutional portion of the Ohio statute, applied on the date plaintiff filed suit, rendering it untimely. This is a far cry from employing the principles of retroactivity to revive a suit time-barred since the Great Depression. Further, the Hyde Court reiterated the rale that “finality” “limits the principle of retroactivity itself.” Id. at 759, 115 S.Ct. 1745. Thus, Respondents’ argument must fail.[6]

Gulotta v. Cutshaw

The only other basis cited by the District Court for granting summary judgment is the fact Erie.T. White was not the record owner of the property. Prior to Mennonite, however, this Court had repeatedly held, in the context of tax sales, “the fact that property is assessed in the wrong name does not prevent the running of the five year peremptive period.” Gulotta v. Cutshaw, 283 So.2d 482, 492 (La.1973) (on reh’g); see Yuges Realty v. Jefferson Parish Developers, Inc., 205 La. 1033, 1041, 18 So.2d 607, 609 (1944) (“[F]or the purpose of prescription under the Constitution, it is immaterial whether the assessment was made in the name of the true owner, or in the name of another, or in no name at all.”); Weber’s Heirs v. Martinez, 125 La. 663, 667, 51 So. 679, 681 (1910) (same).
The facts of Gulotta are similar to the instant case. Gulotta purchased property in Iberville Parish and paid taxes on the property from 1907 through 1911. The property then disappeared from the tax rolls, reappearing in 1958 in the name of the Estate of Walter Row. The public records indicated Row was never the record owner of the property. The property was sold to Cutshaw in 1959 for taxes assessed against Row. In 1969, Gulotta filed suit, seeking to establish better title to the property. Although Row was never the record owner of the property, the Court found the suit to annul the tax sale was perempted under Article X, § 11, as more than ten years had passed since the tax deed was recorded.
We recognize Gulotta’s treatment of a tax sale lacking notice to the record owner as a relative nullity, rather than an absolute nullity, was effectively overruled by Mennonite. See Smitko, 11-2566 at p. 14; 94 So.3d at 759. However, as discussed above, the new rule announced by Mennonite cannot apply retroactively to *219 cases closed by the running of the statute of limitations. Thus, our decision in Gulot-ta is dispositive. The fact that White was not the record owner of Lot 4 does not prevent the running of the peremptive period and is not a valid basis for summary judgment.

De Novo Review

Finally, upon de novo review of the record, we find summary judgment was inappropriate. Both parties have submitted multiple documents from the public records. We note the following relevant transactions in the Mayronne and 114Handlin-Jones chain of title:
• 1918 Wisner Estates, Inc. transfers Lot 4 to Virgil Nobles (COB 42, Page 618).
• 1919 John S. Wells acquires Lot 4 in a tax sale for 1918 unpaid taxes assessed in the name of Virgil Nobles (COB 46, Page 158). Wells then assigns his rights in Lot 4 to Wisner Estates, Inc. by an unrecorded private act.
• 1920 Wisner Estates, Inc. transfers Lot 4 to Nobles (COB 47, Page 284).
• 1920 Lot 4 is adjudicated to the State for 1919 taxes assessed against Virgil Nobles (COB 49, Page 192).
• 1936 Nobles redeems Lot 4, “which was returned on the Tax Collector’s list of land sold [to] the State from the Parish of Jefferson filed in the Land Office, on the 30th day of September 1930” (COB 129, Page 180).
• 1938 John S. Wells transfers Lot 4 to George Mayronne (COB 144, Page 7).
We also note the following relevant transactions in the Zodiac Group’s chain of title:
• 1925 John A. Saxton acquires “Lot 4” of the Third Jefferson Drainage District for unpaid 1924 taxes assessed in the name of Erie T. White (COB 70, Page 617).
• 1931 Saxton transfers “plot No. 4 of the Third Jefferson Drainage District” to the Zodiac Corporation (COB 112, Page 331).
• 1932 “Lot 4” adjudicated to the State for 1931 taxes assessed against John A. Saxton (COB 116, Page 309).
• 1944 “Lot 4” redeemed by Saxton (COB 282, Page 18).
• 1949 The Zodiac Corporation transfers an undivided one-half interest in “plot No. 4 of the Third Jefferson Drainage District” to Robert Ramos (COB 307, Page 681).
Respondents maintain summary judgment is appropriate as the 1925 tax sale was an absolute nullity. According to the public records, in 1920, Lot 4 was adjudicated to the State for 1919 taxes assessed to Virgil Nobles (COB 49, Page 192). The public records indicate the property was not redeemed until 1936 (COB |1S129, Page 180). Consequently, as Lot 4 was already adjudicated to the State in 1920, it could not be assessed and sold again in a tax sale in 1925. See Waterman v. Tidewater Assoc. Oil Co., 213 La. 588, 617, 35 So.2d 225, 235 (1947) (“[I]t is well established that, where property has been adjudicated to the State and not redeemed in time and manner provided by statute, the taxing officers of the State are without power to assess and sell the property as belonging to the former owner or any other person.”).
We disagree with Respondents. First, there is a significant gap in documentation regarding Lot 4 in Respondents’ chain of title from 1920 to 1936. When Nobles redeemed the property in 1936, the certificate of redemption stated Lot 4 was “returned on the Tax Collector’s list of land sold [to] the State from the Parish of Jefferson filed in the Land Office, on the 30th day of September 1930.” If the property had remained with the State from *220 1920 to 1936, there would be no reason for Lot 4 to be returned to the list of property-sold to the State in 1930. This suggests the property could have been returned to Nobles at some point between 1920 and 1930. Further, even if the 1925 tax sale was an absolute nullity, the parties could have still gained ownership of Lot 4 through acquisitive prescription. See Jacobs v. Southern Advance Bag & Paper Co., 228 La. 462, 471-73, 82 So.2d 765, 768-69 (1955); Eivers’ Heirs v. Rankin’s Heirs, 150 La. 4, 9, 90 So. 419, 421 (1921); Wilkie v. Cox, 222 So.2d 85, 90 (La.App. 3 Cir.1969), writ denied, 254 La. 470, 223 So.2d 873. The record, however, is silent as to any acts of possession by the parties.[7]
11fiThis case does not lend itself to summary judgment. From the record before us, we cannot determine which party has better title to Lot 4. The title documentation presented by the parties is ancient, and presumably neither Nobles nor Saxton, nor any party with first-hand knowledge of these transactions is alive to testify. The title documentation is complex as there have been multiple tax sales, adjudications, and transfers, often in rapid succession, in both parties’ chains of title. Additionally, the gaps in title documentation raise questions of fact regarding ownership of Lot 4. For example, it is unclear how John S. Wells regained title to Lot 4, after he transferred Lot 4 to Wisner Estates in 1919, in order to sell it to George Mayronne in 1938. Thus, the issue of which party has better title is more appropriately settled through a trial on the merits. Cf. Morris v. Bass Enter. Prod. Co., 01-1242 (La.App. 4 Cir. 8/28/02); 828 So.2d 1128, 1130, writ denied, 02-3084 (La.4/4/03); 840 So.2d 1214 (issues involving “ancient, complex title documentation” best resolved by trial, rather than by summary judgment).
CONCLUSION
In summary, we find Mennonite cannot apply retroactively to invalidate the instant 1925 tax sale for lack of adequate notice. Under the United States Supreme Court’s retroactivity jurisprudence, a new rule of constitutional law announced by the Court applies to all future cases and cases pending on direct review on the date the Court’s decision is rendered. Further, retroactivity is limited by the doctrines of res judicata and statutes of limitations or repose. As the instant case was not pending on direct review at the time Mennonite was decided, and a suit to annul the tax sale was perempted fifty-three years before Mennonite, the notice requirements of Mennonite cannot apply retroactively to invalidate the 1925 tax sale. We also find summary judgment is inappropriate, as there are genuine issues of material fact regarding ownership of the disputed property. Accordingly, we | (7reverse the judgments of the lower courts and remand to the District Court for further proceedings *221 consistent with the views expressed in this opinion.
DECREE
For the foregoing reasons, the judgments of the lower courts are reversed and this case is remanded to the District Court for further proceedings.
REVERSED; REMANDED.
Judge JEFFERSON D. HUGHES III was assigned as Justice pro tempore, sitting for KIMBALL, C.J. for oral argument. He now sits as an elected Associate Justice at the time this opinion is rendered.
WEIMER, Justice, additionally concurring with reasons.

 Judge Jefferson D. Hughes III was assigned as Justice pro tempore, sitting for Kimball, C.J. for oral argument. He now sits as an elected Associate Justice at the time this opinion is rendered.

. Article X, § 11 states a proceeding to annul must be instituted "within six months from service of notice of sale ... and within five years from the date of recordation of the tax deed, if no notice is given." A similar provision is included in the 1974 Constitution. See La. Const, art. VII, § 25(C).

. The Zodiac Group also argued die District Court erred by failing to consider the "reasonable step” doctrine, stated by the United States Supreme Court in Jones v. Flowers, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006). The appellate court, however, found Jones distinguishable, as “Jones presupposes that the State will at least attempt to notify the record owner of the property of a pending tax sale.” Here, "the record owner of the subject Lot 4 was not in any way notified of the pending tax sale.” Quantum Res., 11-813 at p. 10; 98 So.3d at 400.

. See, e.g., Beam, 501 U.S. at 547, 111 S.Ct. at 2439 (Blackmun, J., concurring) ("[Fjailure to apply a newly declared constitutional rule to cases pending on direct review violates basic norms of constitutional adjudication.”); Strope v. Cummings, 653 F.3d 1271, 1274 (10th Cir.2011); Hernandez v. Thaler, 630 F.3d 420, 430 n. 51 (5th Cir.2011); Hatchett v. United States, 330 F.3d 875 (6th Cir.2003) (new rule of federal law applied to case "pending on direct review” at the time decision was rendered); cf. Danforth v. Minnesota, 552 U.S. 264, 266, 128 S.Ct. 1029, 1032, 169 L.Ed.2d 859 (2008) (new rules of criminal procedure must be applied in all future trials and "all cases pending on direct review”).

. Additionally, commentators analyzing adjudicative retroactivity following Harper have repeatedly noted this limitation. See, e.g., Steven W. Allen, Toward a Unified Theory of Retroactivity, 54 N.Y.L. Sen. L.Rev. 105, 109— 10 (2010); Meir Katz, Note, Plainly Not "Error": Adjudicative Retroactivity on Direct Review, 25 Cardozo L.Rev. 1979, 1985 (2004); Pamela J. Stephens, The New Retroactivity Doctrine: Equality, Reliance and Stare Deci-sis, 48 Syracuse L.Rev. 1515, 1568 (1998).

. As one commentator observed, under unlimited retroactivity "A company could face an intentional infliction of emotional distress claim for sexual harassment dating back to an era in which the term was not part of society’s collective vocabulary.” William Reed Huguet, Note, Hulin v. Fibreboard Corp.-In Pursuit of a Workable Framework for Adjudicative Retroactivity Analysis in Louisiana, 60 La. L.Rev. 1003, 1029 (2000).

. Respondents also argue, under Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), the peremptive period of Article X, § 11 constitutes state action, as the period is triggered by recordation of the tax deed. Thus, actual notice was required under Mennonite, and the peremptive period fails to cure any due process violation. This argument presupposes Mullane and Mennonite could possibly apply to the 1925 tax sale. Suit to annul the sale became time-barred twenty years before Mullane and fifty-three years before Mennonite was decided, and thus, Respondents' argument fails.

. The parties contend there can be no claim of acquisitive prescription, as Lot 4 is covered by several feet of water, and thus, corporeal possession is not possible. Without ruling on this issue, we note what constitutes possession for the purpose of acquisitive prescription depends primarily on the nature of the property. Chevron U.S.A. Inc. v. Landry, 558 So.2d 242, 244 (La.1990) (noting "a greater quality of possession is required in the case of woodland than in the case of swamp or marsh land”). The parties fail to cite to any case law holding acquisitive prescription is not possible for underwater property. See, e.g., Leake v. Richardson, 199 Va. 967, 976, 103 S.E.2d 227, 234 (1958) (holding, for underwater property, there must be acts of ownership "indicat[ing] a change of condition, showing a notorious claim of title”); 3 Am.Jur.2d Adverse Possession § 265, at 302 (2002) (“The fact that land is covered by water does not render the acquisition of title thereto impossible.”) (collecting cases).