# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 14-486 consolidated with 14-597

**SAMUEL R. BREAUX, II**

**VERSUS**

**COZY COTTAGES, LLC**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-18336
HONORABLE PENELOPE QUINN RICHARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

**WRITS DENIED.**

James M. Garner
**Elwood Francis Xavier Cahill, Jr.**
**John T. Balhoff, II**
**Paul R. Trapani, III**
**Sher Garner Cahill Richter Klein & Hilbert L.L.C.**
**909 Poydras Street, 28th Floor**
**New Orleans, LA 70112**
**(504) 299-2100**
**COUNSEL FOR DEFENDANT APPLICANT:**
       **Chicago Title Insurance Company**

**David Frank Dwight**
**Stephen C. Dwight**
**Dwight Law Firm**
**1400 Ryan St.**
**Lake Charles, LA 70601**
**(337) 439-3138**
**COUNSEL FOR DEFENDANT RESPONDENT:**
    **Cozy Cottages, L.L.C.**

**Claude P. Devall**
**J. Lee Hoffoss, Jr.**
**Donald Wayne McKnight**
**Hoffoss Devall, L.L.C.**
**3205 Ryan Street**
**Lake Charles, LA 70601**
**(337) 433-2053**
**COUNSEL FOR DEFENDANT RESPONDENT:**
    **Cozy Cottages, L.L.C.**

**Hon. Cecil R. Sanner**
**District Attorney 38th JDC**
**P. O. Drawer 280**
**Cameron, LA 70631**
**(337) 775-5713**
**COUNSEL FOR RESPONDENT:**
    **Richard Abshire**
    **Richcore, Inc.**
    **Jessica Abshire**

**Charles Schrumpf**
**Law Offices of Oliver and Charles Schrumpf, P.L.C.**
**3801 Maplewood Dr.**
**Sulphur, LA 70663**
**(337) 625-9077**
**COUNSEL FOR PLAINTIFF RESPONDENT:**
    **Samuel R. Breaux, II**

**Dennis R. Sumpter**
**Sumpter Law Offices**
**1003 South Huntington St.**
**Sulphur, LA 70663**
**(337) 527-5278**
**COUNSEL FOR RESPONDENT:**
    **Dennis R. Sumpter**

**James Huey Gibson**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1300**
**COUNSEL FOR RESPONDENT:**
   **Charles K. Watts**
   **Seale, Smith, Zuber & Barnette**
   **Lawrence R. Anderson, Jr.**

**SAUNDERS, Judge**

This is a case involving a dispute over title to immovable property located in Cameron Parish, Louisiana. Two parties claim title to the same tract of land from two separate chains of title. Samuel R. Breaux, II (hereafter "Plaintiff") filed suit for declaratory judgment against Cozy Cottages, LLC (hereafter "Cozy Cottages), seeking recognition of his right of ownership.

## FACTS AND PROCEDURAL HISTORY

This case revolves around a title dispute over Lot 8, located in the Edmond Doiron Subdivision in Cameron Parish (hereafter "the property"). Lot 8 of the Edmond Dorion Subdivision in Cameron Parish came into being in 1883 when Edmond Dorion's children partitioned his property. His son, Edward Doiron, received Lot 8. Edward Doiron had ten children. One of them was Antoine Doiron. Antoine Doiron had no children, but was married to Mary Viola Doiron, who had a son, Lawrence Marsh.

Antoine Doiron died testate in 1952. His testament, executed on March 31, 1949, provided that his wife, Mary Viola Doiron, be given "use, enjoyment, rents, royalties, and income of and from all lands owned by me, or in which I may have an interest, in Cameron Parish, Louisiana, to have and to hold the same for her and during her natural life." The next paragraph of the testament provided that the "reversion and remainder of my lands above mentioned, from and after the decease [sic] of my said wife, to my brothers and sisters, in fee simple, share and share alike." A judgment of possession was signed on November 15, 1952, which decreed that Antoine Doiron's wife, Mary Viola Doiron, be "sent into possession, as owner, of the use and usufruct, and all emoluments, issuing and emanating from the rent, royalties, and incomes from that certain property, left by the deceased in Cameron Parish, Louisiana." Then, the property is described. Finally, the next

paragraph orders that Antoine Doiron's widow "be sent into possession, as owner, of the above estate, free and clear of any inheritance tax."

Antoine Doiron's wife, Mary Viola Doiron, died in 1983. In 1988 and 1989, the Cameron Parish Tax Assessor's office sent notices of a tax sale in the name of the Viola Doiron Estate. It is undisputed that the notices were sent through Lawrence Marsh, the son of Mary Viola Doiron, who was the tax sale purchaser.

Lawrence Marsh was married to Mabel Marsh, and their son is Robert Marsh. Lawrence Marsh's testament willed his entire estate to his wife, Mabel. After Lawrence Marsh died, Mabel Marsh and Robert Marsh sold their interest in the property to Plaintiff.

Cozy Cottages claims title to the property at issue from a completely different chain of title, beginning with persons named Clarville Doiron and Isaac Doiron. Clarville Doiron sold part of the property to Clarence Turner on October 18, 1949. Isaac Doiron sold part of the property to Clarence Turner on March 22, 1958. The record contains no information as to who these persons may be or the source of their title. From the sales to Clarence Turner, the property changed hands multiple times, eventually leading to the purchase by Cozy Cottages from Richard, Jessica, and Marion Abshire, and the Abshire's company, Richcore Enterprises, in 2008. It is from this complicated set of facts that this dispute arises.

Plaintiff filed suit for declaratory judgment, claiming title to the property at issue following his purchase in 2005. Cozy Cottages claims an interest in the same property, following its purchase in 2008 from the Abshires and Richcore Enterprises. Cozy Cottages purchased title insurance from Chicago Title Insurance Company (hereafter "Chicago Title") in conjunction with its 2008 purchase of the property. Through the course of several supplemental and amended third-party petitions, Cozy Cottages filed third-party demands against Chicago Title, seeking

defense of Plaintiff's claims against it or damages, and damages for failing to cure additional defects in the title. All parties filed separate motions for summary judgment.

In its motion for summary judgment, Chicago Title sought dismissal of Cozy Cottages' claims against it, asserting:

1. Plaintiff has no claims against Cozy Cottages because the tax sales were absolute nullities for failure to give all owners notice of the tax sale, thus, Cozy Cottages has no claims against Chicago Title;

2. coverage under the insurance policy issued to Cozy Cottages terminated because Cozy Cottages failed to cooperate when it hired new counsel prior to consummation of a settlement negotiated by the law firm hired by Chicago Title to represent Cozy Cottages; and

3. Chicago Title has no duty to defend Cozy Cottages against the claims of Plaintiff because the policy provides that Chicago Title has the option to defend, tender policy limits, or settle with or pay parties other than the insured.

Cozy Cottages also filed a motion for summary judgment seeking dismissal of Plaintiff's claims against it, asserting that Plaintiff has no interest in the property because the tax sales were absolute nullities for failure to provide all owners with notice of the tax sale. All parties' motions for summary judgment were denied.

Chicago Title filed a writ application, No. 14-486, requesting review of the trial court's denial of its motion for summary judgment seeking to have Cozy Cottages' claims against Chicago Title dismissed. Cozy Cottages filed a writ application, No. 14-597, requesting review of the trial court's denial of its motion for summary judgment seeking dismissal of Plaintiff's claims against Cozy Cottages. Because there is an issue common to both writ applications, we

3

consolidate the two writs and address them in a single opinion. We find the trial court did not err in failing to grant either motion for summary judgment and, thus, deny these writs.

## STANDARD OF REVIEW

Since the denial of a motion for summary judgment is an interlocutory ruling from which no appeal may be taken, the only practical remedy available to avoid a possibly useless trial on the merits is to request that the appellate court exercise its supervisory jurisdiction to review the propriety of this ruling. *Louviere v. Byers*, 526 So.2d 1253 (La.App. 3 Cir.), *writ denied*, 528 So.2d 153 (La.1988). This court has stated, "[t]he exercise of supervisory jurisdiction by appellate courts is within their plenary power. La.Const. art. 5, § 10. Appellate courts generally will not exercise such jurisdiction unless an error in the trial court's ruling will cause the petitioner irreparable injury or an ordinary appeal does not afford an adequate remedy." *Borrel's, Inc. v. City of Marksville*, 05-48, p. 1 (La.App. 3 Cir. 6/1/05), 904 So.2d 938, 939 (citing *Stevens v. Patterson Menhaden Corp.*, 191 So.2d 692 (La.App. 1 Cir. 1966), *writ denied*, 250 La. 5, 193 So.2d 524 (1967)).

"Appellate courts review summary judgments de novo, applying the same criteria that govern a trial court's determination of a motion for summary judgment." *Johnson v. State Farm Ins.*, 08-1250, p. 2 (La.App. 3 Cir. 4/1/09), 8 So.3d 808, 810. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2). Thus, we "review[] the record de novo to determine whether there is any genuine issue of material

fact." *Quantum Res. Mgmt., L.L.C. v. Pirate Lake Oil Corp.*, 12-1472, p. 5 (La. 3/19/13), 112 So.3d 209, 214, *cert. denied*, 134 S.Ct. 197 (2013).

## DISCUSSION

**Nullity of the tax sales**

Chicago Title and Cozy Cottages maintain summary judgment dismissing the claims of Plaintiff is appropriate because notice of the tax sale was not given to the siblings of Antoine Doiron, the alleged naked owners of the property. Although there is no dispute that the siblings of Antoine Doiron or the heirs of the siblings of Antoine Doiron were not notified of the pending tax sale, we find summary judgment inappropriate on this issue.

Notice of a tax sale to the property owner is a prerequisite to the validity of the tax sale. Failure to give the requisite notice is a violation of Due Process and the subsequent tax sale is an absolute nullity. *Quantum Res. Mgmt.*, 112 So.3d 209. However, the notice requirement announced in *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706 (1983), will not serve to retroactively undo prescription that has already accrued. *Quantum Res. Mgmt.*, 112 So.3d 209.

Antoine Doiron died in 1952. All succession rights are "governed by the law in effect on the date of the decedent's death." La.Civ.Code art. 870(B). At the time of his death, former La.Civ.Code art. 1030 (1870), provided a prescriptive period of thirty years for acceptance or renunciation of a succession. Prescription began to run at the death of the testator. *Sun Oil Co. v. Tarver*, 219 La. 103, 52 So.2d 437 (1951)). The heir that failed to accept or renounce within the thirty-year period "bec[ame] a stranger to the succession," 10 La.Civ. L. Treatise, *Successions and Donations* § 7.11 (1995), and "[could] neither accept nor renounce." *Id.* at n.21 (citing *Sun Oil Co.*, 52 So.2d 437). Former La.Civ.Code art. 1030 was still in effect in 1982, when the prescriptive period accrued.

Under the prior law, an heir was able to expressly or tacitly accept a succession. *See* La.Civ.Code art. 988 (1870). Express acceptance occurred "when the heir assume[d] the quality of heir in an unqualified manner, in some authentic or private instrument, or in some judicial proceeding." *Id.*; *See also Succession of Blanchard,* 243 So.2d 329, 332-33 (La.App. 4 Cir. 1971). Tacit acceptance occurred "when some act [was] done by the heir, which necessarily supposes his intention to accept, and which he would have no right to do but in his quality of heir." La.Civ.Code art. 988 (1870); *Blanchard,* 243 So.2d at 333. "Not only the person who is entitled to an inheritance may accept it, but if he dies before having expressly or tacitly accepted or rejected it, **his heir shall have a right to accept it under him**. La.C.C. art. 1007 [(1870)]." *In re Succession of Moore*, 97-1668, 97-1669, p. 16 (La.App.4 Cir. 4/1/98), 737 So.2d 749, 758, *writ denied*, 99-0781 (La. 4/30/99), 743 So.2d 207. Intent to accept was required. La.Civ.Code arts. 990 and 991(1870). Under the prior law, renunciation of a succession was not presumed. La.Civ.Code art. 1017 (1870). Renunciation must have been expressly made in authentic form. *Id.* Renunciation may have also occurred by pleading it in a judicial proceeding or by failing to accept or renounce within thirty years of the death of the ancestor. 10 La.Civ. L. Treatise, *Successions and Donations* § 7.8 (1995).

Under the current law, an heir may still expressly or tacitly accept a succession, although the terminology has changed to formal or informal acceptance. La.Civ.Code art. 957. Formal acceptance occurs when the successor "expressly accepts in writing or assumes the quality of successor in a judicial proceeding." *Id.* Informal acceptance occurs when the successor takes an action which implies the intention to accept. *Id.* Intent to accept is still required. *See* La.Civ.Code arts. 957 and 958. Currently, acceptance is presumed, La.Civ.Code

6

art. 962, and renunciation must be express and in writing, although it is no longer required to be in authentic form, La.Civ.Code art. 963. *Compare* La.Civ.Code art. 1017 (1870).

Whether or not the tax sales were null turns on whether Antoine Doiron's siblings were entitled to notice. Under the former law, this depends on whether they were actually naked owners of the property, which turns on whether they, or their heirs, accepted, renounced, or renounced by failing to accept or renounce the succession within thirty years. Under the current law, it also turns on whether the heirs accepted or renounced the succession. Under both the prior and current law, if the siblings of Antoine Doiron accepted the succession, then they were naked owners and entitled to notice of the tax sale. Since they did not receive notice, then the tax sales would be absolute nullities, and Plaintiff's claims fail. However, if they renounced, under both the prior and current law, or failed to accept or renounce within the thirty-year prescriptive period, under the prior law, then they were not naked owners and, therefore, not entitled to notice of the pending tax sale. If they were not entitled to notice, then Plaintiff may indeed have an interest in the property.

Although the record indicates that the siblings of Antoine Doiron did not participate in the succession proceeding of their deceased brother, they were not required to do so in order to accept or renounce the succession. Under both the former and current law, acts of ownership may suffice to constitute acceptance. La.Civ.Code art. 994 (1870); La.Civ.Code art. 959. Leasing or occupying the succession property, execution of a deed, and donation, sale, or assignment of succession rights have been held to constitute tacit acceptance. 10 La.Civ. L. Treatise, *Successions and Donations* § 7.7 (1995). Even granting another co-heir permission to occupy the property has been held to constitute tacit acceptance. *Id.*

7

at n.9 (citing *Succession of Blanchard*, 243 So.2d 329, La.App. 4 Cir. 1971). From the record before us, we cannot determine whether the siblings of Antoine Doiron, or their heirs, accepted or renounced the succession of Antoine Doiron. There is no evidence in the record concerning either. All that is known is that it is undisputed the siblings of Antoine Doiron did not formally participate in the succession proceedings.

Finally, "issues pertaining to subjective facts such as intent, knowledge, motive, malice, or good faith are usually not appropriate to a summary judgment determination." *Murphy's Lease & Welding Serv., Inc. v. Bayou Concessions Salvage, Inc.*, 00-978, 00-979, p. 6 (La.App. 3 Cir. 3/8/01), 780 So.2d 1284, 1289, *writ denied*, 01-1005 (La. 6/1/01), 793 So.2d 195. Thus, even if Cozy Cottages and Chicago Title could point to some evidence in the record of an act that might indicate Antoine Doiron's siblings accepted the succession, summary judgment would nonetheless be inappropriate as the intent of the act must be explored at trial. Therefore, we conclude that a genuine issue of material fact exists on this issue, precluding a finding that Plaintiff has no ownership interest in the property at issue. Thus, the trial court's denial of Chicago Title's and Cozy Cottages' motions for summary judgment seeking a determination that the tax sales were absolute nullities was not in error.

**Coverage**

In its writ application, Chicago Title argues that the trial court erred in denying its motion for summary judgment on the ground that, in the event Plaintiff does have any claims against Cozy Cottages and, as a result, Cozy Cottages has a claim against Chicago Title, Chicago Title's contractual obligations were terminated because Cozy Cottages failed to cooperate in facilitating a settlement

with Plaintiff.  Chicago Title relies on the following policy provision in support of this contention:

> Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement . . . . If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

Chicago Title contends that Cozy Cottages' engagement of new counsel before a settlement negotiated by the law firm hired by Chicago Title was finalized constitutes non-cooperation under the provision above, such that all its obligations under the policy are terminated.

Cozy Cottages contends that its expressions of disagreement to the proposed settlement do not relieve Chicago Title of its obligations under the policy.  Cozy Cottages points out that it disagreed with the settlement because settlement with Plaintiff would reduce the funds available to resolve the other potential title defects.  Cozy Cottages also contends that the law firm originally provided by Chicago Title failed to sufficiently protect Cozy Cottages' interests because that firm failed to timely file a legal malpractice claim against the attorney who conducted the title search when Cozy Cottages purchased the property. Cozy Cottages further contends that, because there is no "consent to settle" clause in the policy, Chicago Title is not precluded from confecting the proposed settlement.

Whether an insured has breached the duty of cooperation is a factual inquiry suited to summary judgment determination. *Freyou v. Marquette Cas. Co.*, 149 So.2d 697 (La.App. 3 Cir.), *writ refused*, 150 So.2d 771 (La.1963). An insured may "assume and manage its own defense." *Arceneaux v. Amstar Corp.*, 10-2329,

p. 19 (La. 7/1/11), 66 So.3d 438, 451 (citing *Arceneaux v. Amstar Corp.*, 06-1592 (La. App. 4 Cir. 10/31/07), 969 So.2d 755, *writ denied*, 07-2486 (La. 3/24/08), 977 So.2d 952 and *writ denied*, 08-0053 (La. 3/24/08), 977 So.2d 953). Any non-cooperation must be "both material and prejudicial" in order for an insurer to avoid liability. *Freyou*, 149 So.2d at 699-00; *see also Trosclair v. CNA Ins. Co.*, 93-1741 (La.App. 4 Cir. 5/17/94), 637 So.2d 1168, *writ denied*, 94-1596 (La. 9/30/94), 642 So.2d 874. The insurer bears the burden of proving prejudice. *Trosclair*, 637 So.2d at 1170 (citing *Fakouri v. Ins. Co. of N. Am.*, 378 So.2d 1083 (La.App. 3 Cir. 1979).

Under these facts, Chicago Title has failed to demonstrate how its insured's election to assume and manage its own defense in light of a substantial conflict of interest is a failure to cooperate and, further, how such action materially prejudiced the insurer. According to the terms of the policy, Chicago Title may elect to defend Cozy Cottages, tender policy limits to Cozy Cottages, or pay or settle with third parties to cure Cozy Cottages' title to the property at issue. All of these options are still available to Chicago Title. Thus, we find the trial court did not err in denying Chicago Title's motion of summary judgment on this issue.

**Duty to Defend**

Chicago Title also argues that summary judgment is appropriate on the ground that it has no duty to defend Cozy Cottages against Plaintiff's claims because Chicago Title has the option of paying or settling with parties other than the insured, thereby "curing" the title, or of tendering policy limits to the insured, instead of defending the claims in litigation, and that the insurer has exercised the option to settle with Plaintiff. We find the trial court did not err in denying Chicago Title's summary judgment on this ground.

As we explained in *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459, 04-1460, 04-1466, pp. 18-19 (La. 4/12/05), 907 So.2d 37, 51-52 (alterations in original):

> the scope of the duty to defend under an insurance agreement is broader than the scope of the duty to provide coverage. *Steptore v. Masco Constr. Co.*, 93-2064 (La.8/18/94), 643 So.2d 1213, 1218. A court must examine the well-pleaded allegations of the plaintiff's petition to determine whether the plaintiff's allegations "unambiguously exclude[]" coverage. *Id.* Unless unambiguous exclusion of all of the plaintiff's claims is shown, the duty to defend arises. *Id.* Thus, the duty to defend does not depend upon the outcome of the suit, as it does where the purported source of the duty is an indemnity agreement; rather, where the pleadings disclose "even a possibility of liability" under the contract, the duty is triggered. *Id.*

Chicago Title has not fulfilled its obligations under the contract of insurance as it has neither cured title nor tendered policy limits. According to the terms of the policy, the duty to defend does not terminate until claims have been settled or parties other than the insured have been paid. Neither has happened. Consequently, we find no error in the trial court's denial of Chicago Title's motion for summary judgment on this issue.

## CONCLUSION

For the reasons above, we conclude the trial court did not err in denying Chicago Title's and Cozy Cottages' motions for summary judgment and, therefore, deny these writs.

**WRITS DENIED.**

11