CRAIN, J.
*1061 The plaintiffs appeal a summary judgment dismissing their claims against their insurer based upon a breach of the terms and conditions of the policy. We reverse.
FACTS
After their home was destroyed by a fire on June 24, 2016, Jesse and Dena McCartney made a claim under their homeowner's policy issued by Shelter Mutual Insurance Company. The policy required that the insured cooperate with the insurer in any matter relating to a claim, answer under oath any questions posed by the insurer, then sign a written transcript of the questions and answers. The policy further required that the insured submit a proof of loss, submit to examinations under oath, produce records reasonably required by the insurer, and authorize the insurer to obtain records and documentation relevant to the claim. Payment under the policy was contingent upon receipt by the insurer of proof of loss and the insured's compliance with the policy conditions. The McCartneys filed suit seeking recovery under the policy, plus penalties and attorney's fees for Shelter's refusal to tender any payments.
Shelter filed a motion for summary judgment seeking dismissal of the suit. Shelter claims the McCartneys violated the terms and conditions of the policy by failing to provide requested information and refusing to submit to an examination under oath. The McCartneys opposed the motion, asserting there is no evidence they failed to cooperate with Shelter's investigation. The McCartneys claim they submitted extensive documentation and provided Shelter with two recorded statements. Further, they claim they only postponed, but did not refuse, the examination under oath. They also point out Shelter's request for examination under oath was made more than sixty days after the McCartneys submitted their proof of loss and past the time when Shelter was required to make either payment or a written settlement offer under the policy.
The trial court granted Shelter's motion for summary judgment, finding the McCartneys' failure to submit to an examination under oath voided the policy. The McCartneys appeal.
DISCUSSION
After an opportunity for adequate discovery, a summary judgment shall be granted if the motion, memorandum, and supporting documents show no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. Code Civ. Pro. art. 966A(3). The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ. Pro. art. 966A(2). In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria governing the trial court's determination of whether summary judgment is appropriate. In re Succession of Beard, 13-1717 (La. App. 1 Cir. 6/6/14), 147 So.3d 753, 759-60.
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue before the court on the motion for summary judgment, the mover's burden does not require that all essential elements of the adverse party's claim, action, or defense be negated, but only that it point out *1062 the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden then shifts to the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. Pro. art. 966D(1). Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing a motion for summary judgment, and all doubt must be resolved in the opponent's favor. Willis v. Medders, 00-2507 (La. 12/8/00), 775 So.2d 1049, 1050 (per curiam ).
A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. Hines v. Garrett, 04-0806 (La. 6/25/04), 876 So.2d 764, 765 (per curiam ); Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 751. A genuine issue is one upon which reasonable persons can disagree; if reasonable persons can only reach one conclusion, that issue need not be tried and summary judgment is appropriate. Hines, 876 So.2d at 765-66 ; Smith, 639 So.2d at 751. The applicable substantive law determines materiality. Therefore, whether a fact in dispute is material must be viewed in light of the applicable substantive law. Bryant v. Premium Food Concepts, Inc., 16-0770 (La. App. 1 Cir. 4/26/17), 220 So.3d 79, 82, writ denied, 17-0873 (La. 9/29/17), 227 So.3d 288.
A cooperation clause protects the insurer against fraud by enabling it to obtain relevant information concerning the claimed loss while the information is fresh.[1] See Johnson v. Geovera Spec. Ins. Co., 657 Fed. Appx. 301, 304 (5th Cir. 2016) (per curiam ) (applying Louisiana law to determine whether coverage was voided for violating a cooperation clause). Violating a cooperation clause has been held to be both a material breach of the insurance contract and a defense to a suit on the policy. See Lee, 607 So.2d at 688. The failure to submit to an examination under oath or the refusal to produce documentation can constitute such a violation. See Id ; Hamilton v. State Farm Fire & Cas. Ins. Co., 477 Fed. Appx. 162, 165 (5th Cir. 2012) (per curiam ).
However, a cooperation clause is not an escape hatch for the insurer to flee liability for trivial policy violations, and dismissing a suit for breach of a cooperation clause is a draconian remedy. See Beasley v. GeoVera Specialty Ins. Co., 13-395, 2015 WL 2372328, p.3 (E.D.La. 2015) ; Jackson v. State Farm Fire & Cas. Co., 06-7202, 2010 WL 724108, p.8 (E.D.La. 2010) ; see also Lee, 607 So.2d at 685. Thus, an insurer must show a diligent effort to obtain the requested information. Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v. Cagle, 68 F.3d 905, 912 (5th Cir. 1995). Further, the insured's breach must be both material and prejudicial. See King v. King, 210 So.2d 917, 922 (La. App. 1 Cir. 1967) ; see also Williams v. Lowe, 02-355, 02-356 (La. App. 5 Cir. 10/16/02), 831 So.2d 334, 336 ; Desadier v. Safeway Ins. Co., 97-1412 (La. App. 3 Cir. 4/8/98), 712 So.2d 925, 928, writ denied, 98-1249 (La. 6/26/98), 719 So.2d 1058 ; Trosclair v. CNA Ins. Co., 93-1741 (La. App. 4 Cir. 5/17/94), 637 So.2d 1168, 1170, writ denied, 94-1596 (La. 9/30/94), 642 So.2d 874. The burden is on the insurer to prove actual prejudice. Trosclair, 637 So.2d at 1170 ; see also Breaux v. Cozy Cottages, LLC, 14-597 (La. App. 3 Cir. 11/12/14), 151 So.3d 183, 190.
*1063 Whether an insured breached the duty of cooperation is a factual inquiry. Breaux, 151 So.3d at 190. Courts have allowed an insured to avoid dismissal upon finding the insured had a reasonable explanation for his actions. See Beasley, 2015 WL 2372328 at p.4 ; see also Freyou v. Marquette Cas. Co., 149 So.2d 697, 700 (La. App. 3 Cir. 1963).
In support of its motion for summary judgment, Shelter submitted the affidavit of Sonya White, the claims representative tasked with investigating the McCartneys' claim. According to White, coverage questions arose after Shelter's investigation revealed the McCartneys were living across the street from the burned home, which was vacant when the fire started. Mr. McCartney was believed to be out of work and was the last person seen at the property. Thus, White determined additional documents and an examination under oath were needed to fully investigate the claim.
White forwarded a letter to the McCartneys on September 9, 2016, requesting additional documents and an examination under oath. She then learned the McCartneys had an attorney who needed to review the matter before submitting to the examination. On September 27, 2016, White sent another letter requesting information and an examination under oath, but the McCartneys "failed to provide the information requested and failed to give an examination under oath." White attested, "[t]he ability to investigate and investigate early is critical," and claimed the inability to do so substantially prejudiced Shelter's investigation into the McCartneys' claim.
Shelter also submitted the affidavit of Mary Gladney, the claim supervisor for the McCartneys' claim, who attested to the facts provided by White. According to Gladney, the McCartneys refused Shelter's request for documents and an examination under oath, choosing to sue rather than comply with the terms of the policy.
The affidavit of Laurie Johnson, a paralegal employed by the law firm representing Shelter in this litigation, was also submitted by Shelter. According to Johnson, she contacted the McCartneys on September 19, 2016, and scheduled their examination under oath for September 27, 2016. By letter dated September 21, 2016, counsel for the McCartneys notified Shelter of his representation and requested copies of documents, Shelter's investigative reports, and the policy at issue. Counsel also postponed the examination under oath until he could review the file and confer with the McCartneys. By letter dated September 27, 2016, Shelter requested the examination under oath be rescheduled. Johnson telephoned the McCartneys' counsel on October 20, 2016 to reschedule but "was informed that suit had been filed and therefore, examinations under oath would not be allowed to be scheduled."
After de novo review, we find Shelter failed to prove entitlement to summary judgment. The summary judgment evidence establishes Shelter first requested an examination under oath and additional documents in September 2016, months after the June 2016 fire and after the McCartneys submitted what they believed was the required proof of loss. The McCartneys reasonably explained the examination under oath was postponed to allow their counsel to review the relevant material, and Shelter did not object. The McCartneys refused to reschedule the examination because suit was filed alleging Shelter's failure to timely pay the claim. Shelter immediately sought dismissal of the suit based on that refusal. Shelter acknowledged that after suit was filed, the McCartneys agreed to submit to an examination under oath.
*1064 Shelter's summary judgment evidence establishes a delay between the fire and its requests, but the delay was due as much to the dilatory action of Shelter as the McCartneys. The jurisprudence cautions against allowing an insurer to use a cooperation clause to flee liability based on trivial policy violations. See Beasley, 2015 WL 2372328 at p.3 ; Jackson , 2010 WL 724108 at p.8. Given the evidence submitted, the McCartneys' one-time refusal to schedule an examination under oath does not warrant the draconian remedy of dismissing their suit. Additionally, the record contains no evidence suggesting Shelter was prejudiced by any action or inaction by the McCartneys. Consequently, the summary judgment is reversed.[2]
CONCLUSION
The summary judgment is reversed, and this matter is remanded for further proceedings. The answer to appeal is denied as moot. Costs of this appeal are assessed to Shelter Mutual Insurance Company.
REVERSED AND REMANDED; ANSWER TO APPEAL DENIED.
Welch, J., concurs without reasons.
Guidry, J., dissents and assigns reasons.
I respectfully disagree with the majority's opinion reversing the trial court's granting of summary judgment in favor of Shelter Mutual Insurance Company (Shelter). The homeowner's insurance policy at issue required the McCartneys to cooperate with the insurer and to, among other things, submit a proof of loss and submit to an examination under oath and produce records reasonably required by the insurer. Payment under the policy was contingent upon receipt by the insurer of proof of loss and the insured's compliance with the policy provisions.
In support of its summary judgment, Shelter presented the affidavit of Sonya White, the claims representative who investigated the McCartneys' claim. White stated that she requested an examination under oath and the production of additional requested documents, but that the examination was postponed because the McCartneys had retained counsel and counsel needed additional time to review the file and confer with his clients. In another affidavit, Laurie Johnson, a paralegal employed by the law firm representing Shelter in this litigation, stated that she attempted to contact the McCartneys to reschedule their examination, but she was informed that suit had been filed and examinations under oath would not be allowed to be scheduled. As such, based on this affidavit testimony, Shelter clearly provided evidence meeting its burden of establishing that the McCartneys failed to submit to the examination under oath, which constituted a violation of the cooperation clause in their contract of insurance.
Furthermore, Shelter submitted affidavits establishing that Shelter was prejudiced by the McCartneys' violation. White stated that the information requested of the McCartneys as well as the examination under oath were essential to the investigation of the claim. White explained that ascertaining detailed facts and events around the date of the loss, information regarding the house and its contents, the whereabouts of the McCartneys and those they were allegedly with, information regarding the financial status, phone information, contents issues, building documents, *1065 information from and about those who may have been in contact with the McCartneys and what information those people may know, and other information was particularly critical to the investigation. According to White, this information was necessary in order to advance the investigation and address, obtain, and acquire information while it was fresh in the minds of the McCartneys and those whom they may have been in touch with. White stated that the investigation efforts were material to her overall investigation of the claim and the McCartneys' failure to comply with the terms and conditions of the contract of insurance prejudiced her ability to complete the investigation of the claim. White stated that in a claim of this nature, timing is important; it is critical to be able to learn information and obtain information at such time as the information is readily available, can be secured, and information can be obtained from persons when details about time, place, and others present is fresh in that person's mind. White further stated that being able to take an examination under oath early on leads to the ability to contact other individuals to see if stories are similar about events and this is typically only successful if it can be done early on.
Additionally, Shelter submitted the affidavit testimony of Mary Gladney, claims supervisor for Shelter, who supervised the handling of the McCarnteys' claim. Gladney stated that Shelter made a request that the McCartneys submit to an examination under oath and produce documents, which steps were necessary to investigate their claim. According to Gladney, the examination under oath and request to produce documents were material to Shelter's overall consideration of the McCartneys' claim, and the failure on the part of the McCartneys to comply with the terms and conditions of the contract of insurance prejudiced Shelter's ability to complete the investigation of the claim. Gladney reiterated the importance of the examination as an investigative tool and the importance of obtaining information early on and at a time when information is fresh in the minds of the insureds. Accordingly, the affidavit testimony submitted by Shelter clearly establishes that Shelter was prejudiced by the McCartneys' failure to comply with the contract of insurance. See Kerr v. State Farm Fire & Casualty Co., 934 F.Supp.2d 853, 861-863 (M.D.La. 2012).
Therefore, I respectfully disagree with the majority in finding that Shelter failed to meet its burden of establishing that the McCartneys violated the terms and conditions of the contract of insurance by failing to provide the requested documents and refusing to submit to an examination under oath and in reversing the summary judgment granted in favor of Shelter.

Louisiana courts have recognized federal jurisprudence is particularly relevant to consideration of the issues raised herein. See Lee v. United Fire & Cas. Co., 607 So.2d 685, 688 (La. App. 4 Cir. 1992).

Shelter answered this appeal seeking review of the trial court's refusal to strike affidavits submitted in opposition to the motion for summary judgment. Because we find Shelter failed to meet its burden of proof on the motion, the relief requested in Shelter's answer is moot.